IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZAIDA RIVERA CARRASQUILLO, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Nos.** 13-1296, 13-1384, 13-1812, 13-1860 & 13-1896 (FAB) |
| EDUARDO BHATIA-GAUTIER, *et al.*, | |
| **Defendants.** | |
| JANICE TORRES-TORRES, *et al.*, | |
| **Plaintiffs,** | |
| **v.** | **Civil Nos.** 13-1560, 13-1862, 13-1820, 13-1895, & 15-2738 (FAB) |
| JAIME PERELLÓ-BORRÁS, *et al.*, | |
| **Defendants.** | |

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is Oscar Serrano-Negrón ("Serrano")'s motion to unseal confidential settlement agreements and records regarding indemnification costs associated with Act No. 9 of November 27, 1966 ("Law 9").  (Docket No. 454.)  For the reasons set forth below, Serrano's motion to unseal is **GRANTED**.

I.   Background

Former employees of the Puerto Rico Senate ("Senate"), the Puerto Rico House of Representatives ("House"), and the Office of the Superintendent of the Capitol Building ("OSC") (collectively,

Civil Nos. 13-1296 *et al.*, (FAB)                                              2

"plaintiffs") commenced nine civil actions against public
officials (collectively, "defendants") pursuant to the First
Amendment of the United States Constitution, Article II of the
Puerto Rico Constitution, the Human Resources Administration
System Act, and Articles 1802 and 1803 of the Civil Code.  See
P.R. Laws Ann. tit. 3, § 1461; P.R. Laws Ann. tit. 31, §§ 5141 *et
seq.*[1]  The defendants purportedly purged members of the New
Progressive Party ("NPP") from the Senate, House and OSC payrolls
for political gain.  Id.

   The parties executed two confidential settlement agreements
(hereinafter, "settlement agreements").  (Case No. 13-1296, Docket
No. 197; Case No. 13-1560, Docket No. 180.)[2]  Essentially, the

---

[1] Officials from the Puerto Rico Senate are named as defendants in Cases Nos.
13-1296, 13-1812, 13-1860, and 13-1384.  Officials from the Puerto Rico House
of Representatives appear in Cases Nos. 13-1820 and 13-1895.  Officials from
the Office of the Superintendent of the Capitol appear in Cases Nos. 13-1862,
13-1569, and 15-2738.  The OSC is responsible for "keeping and maintaining the
buildings, offices and structures of the Puerto Rico Legislative Branch, as
well as peripheral areas, in optimal conditions." (Case No. 13-1560, Docket No.
1.)

[2] The former Senate employees and defendants Eduardo Bhatia-Gautier, Denise
Rivera-González, Tania Barbarrosa-Ortiz, Luis Ramos-Rivera, José Hernández-
Arebelo, Juan Vázquez-López, and Maritza Alejandro-Cheves entered into a
confidential settlement agreement on May 25, 2016 for $6,267,000.00 ("Senate
agreement"), payable in one installment of $1,000,000.00, and two subsequent
installments of $2,633,750.00.  (Case No. 13-1296, Docket No. 197.)  The former
House and OSC employees entered into a confidential settlement agreement with
Jaime Perelló-Borrás, Javier Vázquez-Collazo, Rosendo Vela-Birrel, Álvaro
Vázquez-Ramos, Miguel Arana-Colón, Aileen Figueroa-Vázquez, Xavier González-
Calderón, José Fuentes-Serrano, René Valle-Umpierre, José Sapia, and Julio
Mojica on October 4, 2016 ("House/OSC agreement") for $3,690,000.00, payable in
two successive installments of $2,460,000.00 and $1,230,000.00 (Case No. 13-
1560, Docket No. 180.)

Civil Nos. 13-1296 *et al.*, (FAB)                                    3

plaintiffs moved to dismiss the complaints in exchange for
$9,957,500.00.  Id.  Only the "case participants" and Court
personnel are permitted to access these documents.  (Case No. 13-
1296, Docket No. 197; Case No. 13-1560, Docket No. 180.)  These
agreements contain the following confidentiality provision:

> The Plaintiffs further agree to maintain confidential
> the fact that they have entered into this Agreement, as
> well as all of its details, terms, and conditions. Unless
> disclosure is required by law and/or means of a Court
> Order issued to such effect, the Plaintiffs shall not
> disclose the contents of this Agreement to third
> parties, except as it may be reasonably necessary to
> reveal the terms hereof to their attorney(s), spouse,
> accountant(s), or representatives, who shall be bound to
> maintain the confidentiality of this Agreement in the
> same terms as them.  In the event that anyone approaches
> the Plaintiffs and asks them about the status of their
> claim, their answer shall be limited to discussing that
> the matter has been resolved to the satisfaction of the
> parties, but they shall refrain from further comment.
> Under no circumstances shall this document or any copy
> thereof be distributed to the Press or Media or any
> person or entity without the Defendant's written
> authorization.  The signatories agree not to publish,
> publicize, or disseminate in any way information
> obtained by their attorneys through the discovery
> process of this case.

(Case No. 13-1296, Docket No. 197 at p. 7.)[3]

The defendants failed to remit timely payments, falling into
arrears for millions of dollars just as "the island effectively
ran out of cash and stopped paying its debt."  Id.; Mary W. Walsh,

---

[3] The Senate and House/OSC agreements contain identical confidentiality
provisions.  (Case No. 13-1296, Docket No. 197; Case No. 13-1560, Docket No.
180.)

Civil Nos. 13-1296 *et al*., (FAB)                                    4

"How Puerto Rico is Grappling with a Debt Crisis," New York Times
(May 16, 2017) (available at https://www.nytimes.com/interactive
/2017/business/dealbook/puerto-rico-debt-bankruptcy.html)  (last
visited March 9, 2022).  On May 3, 2017, the Oversight Board filed
a Title III petition on behalf of the Commonwealth pursuant to the
Puerto  Rico  Emergency  Moratorium  and  Rehabilitation  Act
("PROMESA"), 48 U.S.C. §§ 2010 *et seq.*  In re Commonwealth of
Puerto Rico, No. 17-3283 (LTS) (D.P.R. May 3, 2017).  This petition
triggered the automatic stay set forth in 11 U.S.C. section 362(a).
See 48 U.S.C. § 2194.[4]

On May 11, 2018, the plaintiffs requested that this Court
compel the defendants, in their individual capacities, to satisfy
the outstanding settlement amount.  (Docket No. 398 in Case No.
13-1296; Docket No. 239 in Case No. 13-1560.)  The settlement
agreements  stipulate,  however,  that  the  defendants  are  the

---

[4] Congress patterned the automatic stay contained in section 2194 of PROMESA on
the United States Bankruptcy Code.  48 U.S.C. §§ 2102-2241.  Section 2194(b)(1)
of PROMESA stays actions or proceedings against the Government of Puerto Rico
that were or could have been commenced before the enactment of PROMESA.  Id. at
§ 2194(b)(1).  The statute also stays judicial actions "to recover a Liability
Claim against the Government of Puerto Rico that arose before the enactment of
[PROMESA]."  Id.  In the bankruptcy context, the automatic stay becomes
operative upon the filing of a bankruptcy petition, and "is extremely broad in
scope," applying "to almost any type of formal or informal action taken against
the debtor."  Montalvo v. Autoridad de Acueductos y Alcantarillados, 537 B.R.
128, 140 (Bankr. D.P.R. 2015) (citing Alan N. Resnick & Henry J. Sommer, 3
Collier on Bankruptcy ¶ 362.03 (16th ed. 2015)).

"beneficiaries" of Law 9.  (Case No. 13-1296, Docket No. 197 at p.

4; Case No. 13-1560, Docket No. 180 at p. 5.)  Law 9 provides that:

> Every official, ex-official, employee, or ex-employee
> of the Commonwealth of Puerto Rico who is sued for
> damages in his personal capacity, when the cause of
> action is based on alleged violations of the
> plaintiff's civil rights, due to acts or omissions
> committed in good faith, in the course of his
> employment and within the scope of his functions, may
> request the Commonwealth of Puerto Rico to provide
> him with legal representation, and to subsequently
> **assume the payment of any judgment that may be entered
> against his person**.

Laws P.R. Ann. tit 32, § 3085 (emphasis added).  In sum, the

individual defendants avoided trial by writing checks with public

funds – checks that could not be cashed because of the automatic

stay due to PROMESA.

According to the defendants, the "Commonwealth of Puerto Rico

ought to pay from monies drawn from the public fisc which, as we

all know, is a major component of the Debtor's [Commonwealth's]

Estate."  (Case No. 13-1296, Docket No. 434 at p. 8.)  To provide

context for this assertion, the Court ordered Puerto Rico Attorney

General Domingo Emanuelli-Hernández to disclose the annual amount

of payments made by the Commonwealth of Puerto Rico pursuant to

Law 9 for each of the past ten years.  (Case No. 13-1296, Docket

No. 439 at p. 4.)  The Department of Justice submitted a Law 9

expense report on February 3, 2022.  (Case No. 13-1296, Docket No.

Civil Nos. 13-1296 *et al.*, (FAB)                                              6

452, Ex. 2.)[5]  From 2013 to the present, the Commonwealth has paid

approximately $14,402,935.93 to defend and hold harmless, *inter*

*alia*, politicians accused of civil rights violations.  Id.

| Year | Indemnification Costs |
|------|----------------------|
| 2013 | $1,030,000.00 |
| 2014 | $1,816,010.05 |
| 2015 | $1,127,724.44 |
| 2016 | $4,154,734.62 |
| 2017 | $5,850,565.50 |
| 2018 | $150,000.00 |
| 2019 | $901.32 |
| 2020 | 0 |
| 2021 | 0 |

The Court denied the plaintiffs' motion to compel, holding

that Law 9 "precludes the plaintiffs from seeking payment from the

defendants in their individual capacities."  (Case No. 13-1296,

Docket No. 456 at p. 12.)  Subsequently, Serrano moved to unseal

the settlement agreement and the Law 9 expense report.  (Docket

No. 454 at p. 1.)[6]  The defendants assert, however, that the

---

[5] This report is currently available only to the parties and this Court.  Case No. 13-1295, Docket No. 452, Ex. 2.)

[6] Serrano is a journalist and an attorney.  (Case No. 13-1296, Docket No. 454.)

confidentiality provisions require that these documents remain under seal.  (Docket No. 458.)

## II.    Standard of Review

To determine whether an order to seal is appropriate, courts balance public and private interests.  <u>Nat'l Org. for Marriage v. McKee</u>, 649 F.3d 34, 70 (1st Cir. 2011) (citation and quotation omitted).  The scales tip, however, "toward transparency."  <u>Id.</u> Indeed, federal courts have long "recognize[d] a general right to inspect and copy . . . judicial records and documents."  <u>Nixon v. Warner Commc'ns</u>, 435 U.S. 589, 597 (1978); <u>see also</u> <u>In re Gitto Global Corp.</u>, 422 F.3d 1, 6 (1st Cir. 2005) ("Under the common law, there is a long-standing presumption of public access to judicial records."); <u>see</u> <u>In re Providence Journal Co.</u>, 293 F.3d 1, 9 (1st Cir. 2002) (recognizing "that the public has a common-law right of access to judicial documents").  This transparency "allows the citizenry to monitor the functioning of our courts, thereby insuring [*sic*] quality, honesty and respect for our legal system." <u>McKee</u>, 649 F.3d at 49 (quoting <u>FTC v. Standard Fin. Mgmt. Corp.</u>, 830 F.2d 404, 410 (1st Cir. 1987)).

The presumption of public access is broad, extending to "materials on which a court relies in determining the litigants' substantive rights."  <u>See</u> <u>In re Providence Journal Co.</u>, 293 F.3d at 9 (quoting <u>Anderson v. Cryovac, Inc.</u>, 805 F.2d 1, 13 (1st Cir.

1986); United States v. Krayetz, 706 F.3d 47, 58 (1st Cir. 2013) ("[R]elevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of access applies.").   Restricting access to the docket "is a serious step, which should be undertaken only rarely and for good cause." R&G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 12 (1st Cir. 2009) ("Sealing orders are not like party favors, available upon request or as a mere accommodation."); In re Providence Journal Co., 293 F.3d at 10 ("[O]nly the most compelling reasons can justify non-disclosure of judicial records that come within the scope of the common-law right of access.").   The defendants shoulder the burden of establishing that an order to seal is warranted. See Standard Fin. Mgmt. Corp., 830 F.2d at 410.  Orders to unseal are subject to an "abuse of discretion" standard of review. McKee, 649 F.3d at 70  (citation and quotation omitted).

## III. Discussion

The Commonwealth is a party to this litigation.  Accordingly, the presumption of public access is "accentuated." See Standard Fin. Mgmt. Corp., 830 F.2d at 410 ("It cannot be ignored that this litigation involves a government agency and an alleged series of deceptive trade practices culminating (it is said) in widespread consumer losses.  These are patently matters of significant public

Civil Nos. 13-1296 *et al.*, (FAB)                                      9

concern."); United States v. Isaacson, Case No. 09-332, 2010 U.S. Dist. LEXIS 111348, at *6-7 (D.N.H. Sept. 28, 2010) ("Because this case involves a suit by a government agency, this court is even more reluctant to find that the public's interest is outweighed by the parties' private interests."). The Law 9 expenditures are exorbitant, drawn from the public fisc. Consequently, the public has a significant interest in knowing how its government is spending its money.

The defendants set forth two arguments in support of the order to seal. (Case No. 13-1296, Docket No. 458.) First, they contend that restricted access to the settlement agreements and the Law 9 expense report "is necessary . . . because otherwise, the Commonwealth's position at the negotiating table will be considerably undermined." Id. at p. 3. One party's strength is the other's weakness. The defendants' perceived advantage at the "negotiating table" is immaterial to the Court's analysis, and is insufficient to rebut the presumption of public access to judicial records.

Second, the defendants cite the confidentiality provisions in the settlement agreements. Id. at p. 7. They assert that "the signatory parties are bound by the confidentiality clause in the settlement covenant into which they entered voluntarily." Id. These provisions do not, however, overcome the presumption of

public access.  See Gosel v. Boley Int'l Ltd., 738 F.3d 831, 835

(7th Cir. 2013) ("In neither case have [the parties] offered any

reason for secrecy except that they have a confidentiality

agreement. Obviously, that's insufficient, and I could stop there;

because there is potential public value to disclosing the

settlement terms, including amount, parties have to give the judge

a reason for not disclosing them – and the fact that they don't

want to disclose is not a reason."); Brown v. Advantage Eng'g,

Inc., 960 F.2d 1013, 1015-16 (11th Cir. 1992) ("It is immaterial

whether the sealing of the record is an integral part of a

negotiated settlement between the parties, even if the settlement

comes with the court's active encouragement.  Once a matter is

brought before a court for resolution, it is no longer solely the

parties' case, but also the public's case."); McKenzie v. Brannan,

Case No. 20-262, 2020 U.S. Dist. LEXIS 211557, at *14 (D. Me. Nov.

12, 2020) ("[T]he Estate seems to maintain that because the parties

entered into the mediation with assurances of confidentiality, the

Court is bound to enforce the secrecy provisions of their

agreement.  This is not correct.") (citing P.R. Land & Fruit, S.E.

v. Municipio de Culebra, Case No. 09-2280, 2019 U.S. Dist. LEXIS

143915, at *8 (D.P.R. July 23, 2019) (McGiverin, Mag. J.) ("An

agreement by the existing parties is not itself a sufficient basis

to violate the public's right to public access.") (citation

omitted)); <u>Lohman v. Rite Aid Corp.</u>, Case No. 11-250, 2011 U.S.
Dist. LEXIS 128394, at *3 (D.N.H. Nov. 2, 2011) ("Under the
circumstances of this case, defendants' interest in preserving the
confidentiality of their agreement with [the plaintiff] does not
outweigh the strong presumption in favor of public access."

Because the defendants have failed to set forth a compelling
reason for denying the public access to the settlement agreements
and the Law 9 expense report, Serrano's motion to unseal is
**GRANTED**.

## IV.  Conclusion

For the reasons set forth above, Serrano's motion to unseal
is **GRANTED**. (Case No. 13-1296, Docket No. 454.)  The Clerk of the
Court shall remove the "case participants" restriction from all
docket entries in this action.  The record shall be made public.
The Clerk will ensure that Oscar Serrano receives a copy of this
Opinion and Order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 9, 2022.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE